U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAFAYETTE

JAN 24 2013

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Comar Marine Corp.         Civil Action No. 6:09-cv-1438 (Lead)
                                                   6:12-cv-1533 (Member)

versus                                         Judge Richard T. Haik, Sr.

Raider Marine Logistics, LLC, et al       Magistrate Judge C. Michael Hill

**MEMORANDUM RULING**

Before the Court are Cross Motions For Partial Summary Judgment As To Liquidated Damages, Interest And Attorneys' Fees, filed by Plaintiff, Comar Marine Corporation ("Comar") [Rec. Doc. 205] and Defendants and Counter-Claimants in the Lead and Member Cases (collectively referred to as "Defendants"), Marauder Marine Logistics, LLC ("Marauder"), Tracey P. Lirette, Chris St. Amand, Conqueror Marine Logistics, LLC ("Conqueror"), Raider Marine Logistics, LLC ("Raider") and Enforcer Mariner Logistics, LLC ("Enforcer") [Rec. Doc. 221], Defendants' Opposition to Plaintiff's Motion [Rec. Doc. 222], Plaintiff's Reply thereto [Rec. Doc. 226], Defendants' Supplemental Memorandum of its Cross-Motion [Rec. Doc. 235], and Plaintiff's Opposition to Defendants' Cross-Motion [Rec. Doc. 236] and Defendants' Reply Memorandum In Support Of Cross-Motion For Summary Judgment. For the reasons that follow, the motions will be denied.

*I. Background*

This matter arises from Defendants alleged early termination of the four (4) Master Management and Operating Agreements between Comar and each of the four (4) Vessels, the MARAUDER, CONQUEROR, RAIDER, and ENFORCER. *R. 205, Exhs. A-1, A-2, A-3, A-4.*[1] Co-defendants, Tracy P. Lirette and Chris St. Amand, own and manage the Vessels. *Id.* The parties initially entered into Agreements for three of the Vessels: the

---

[1] It is undisputed that the Agreements are maritime contracts.

CONQUEROR, RAIDER, and ENFORCER, each of which had the effective date, February 1, 2007. By virtue of a purchase and sale agreement dated May 21, 2008, Lirette and St. Amand purchased the MARAUDER from a company affiliated with Comar[2]. At Comar's request, the MARAUDER was placed under a management contract with Comar identical to the ones already in place for the CONQUEROR, RAIDER, and ENFORCER and the terms of these three existing management agreements were extended by fifteen (15) months, making the Agreements relating to all four (4) vessels coterminous on May 21, 2011. *R. 205, Exhs. A-1, A-2, A-3, A-4.*

All of the Agreements are identical as to the terms involved. *Id.* Under the terms of each Agreement, Comar agreed to market, manage and operate each Vessel, the MARAUDER, CONQUEROR, RAIDER, and ENFORCER, in exchange for the payment of a management fee. *Id.* At issue in the motion at bar is Agreement provision Article 8, which obligated Defendants to pay Comar liquidated damages if Defendants terminated the Agreements before the expiration of the term for reasons other than an uncured material breach by Comar. Article 8 provides:

> ARTICLE 8. TERMINATION OF AGREEMENT. In the event of a material breach by a Party hereto of any of the terms or provisions of this agreement and the failure to correct or remedy the breach within ten (10) days after receipt of written notice from the non-breaching Party, the non-breaching Party shall have the right to terminate this agreement....
>
> In the event Owner terminates that Agreement before the end of its term for any reason (other than as a result of COMAR's material breach of this Agreement, which is not timely cured), or if COMAR terminates this Agreement due to Owner's material breach of this Agreement, ... Owner shall pay COMAR, not as a penalty but as liquidated damages, fifty (50%) percent of what COMAR would have earned by the Vessel from inception of this Agreement up through the date of termination for all days the Vessel has actually worked. This average gross daily charter hire rate will then be multiplied by the number of days remaining under this Agreement but for its early termination. By way of example, if the Vessel's gross daily charter hire

---

[2] The affiliated company at that time was Nautical Investment Corporation which, for purposes of this motion, will be referred to as "Comar.".

>rate for days actually worked up through termination was $5,000 per day and there were 100 days left under this Agreement but for its early termination, Owner shall owe liquidated damages of $25,000 to COMAR [$5,000 average gross daily charter hire rate x 100 days x .05 (50% of 10%) = $25,000]. The Termination Fee shall be due and payable on the date this Agreement is terminated.

Also, pursuant to Article 11(d), all of the Agreements were cross-defaulted - that is, a default under one Agreement was a default under all four Agreements. Moreover, each Agreement further provides for the payment of interest at the rate of 1-1/2% per month on any amounts due and unpaid under the Agreement and that the losing party shall pay all attorneys' fees and expenses, court costs, and costs of vessel arrest and seizure incurred by the other party. *Id., Art. 15, Art. 17.*

In its motion for summary judgment, Comar contends that Defendants breached the Agreements and are therefore liable *in personam* for liquidated damages, interest and attorneys' fees." *R. 205.* Defendants assert in their cross-motion that the provisions for liquidated damages and associated interest and attorneys' fees in Article 8 of the Agreements are precluded under general maritime law. In the alternative, Defendants argue in their opposition memorandum that genuinely disputed issues of material fact preclude summary judgment as to Comar's claims. The Court will address the parties' positions as follows.

## *II. Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56.* the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir.2002). If the burden of proof at trial

3

lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir.2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir.2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir.2002). When the moving party has met its burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir.2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir.2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002); *Anderson*, 477 U.S. at 255. "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

4

that party's case, and on which that party will bear the burden of proof at trial.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002); *Anderson*, 477 U.S. at 255.

### III. Analysis

Comar contends that Defendants terminated the Agreements effective August 24, 2009, by providing an electronic mail message to Comar stating that Defendants had signed a management agreement with another company. Comar alleges that because Defendants never sent a written notice of termination stating that they were terminating the Agreements due to a material breach by Comar, Defendants are required to pay Comar "termination fees" in the form of liquidated damages pursuant to Article 8 of the Agreements. Comar further alleges that when Comar invoiced Defendants for the termination fees due under the Agreements, which were calculated in accordance with the liquidated damages formula set forth in the Agreements, Defendants refused to discuss payment of the termination fees and have never paid same. In its motion, Comar assets these actions "constitute a clear breach of the Agreements, for which Defendants are liable *in personam* for liquidated damages, interest and attorneys' fees." *R. 205*.

Defendants assert in their cross-motion that the termination fee provisions for liquidated damages and associated interest and attorneys' fees found in Article 8 of the Agreements are actually intended as punishment for breach, rather than to approximate prospective losses, and are therefore precluded under general maritime law. In the alternative, Defendants argue that, assuming Comar's liquidated damage claims are not barred as a matter of law, genuinely disputed issues of material fact preclude summary judgment as to Comar's claims.

Liquidated damages are to be used to put the non-breaching party in the same position in which it would have been but for the breach. *Farmers Export Co. V. M/V Georgis Prois, Etc.*, 799 F.2d 159, 163 (5th Cir. 1986). Liquidated damages cannot be assessed as a penalty.

5

*Id.* at 162; *Louis Dreyfus Corp. V. 27,946 Long Tons of Corn*, 830 F.2d 1321, 1331 (5th Cir. 1987). The burden of proving that a liquidated damages provision constitutes a penalty is on the party urging the penalty construction. *Farmers Export Co.*, 799 F.2d at 162. "Whether the liquidated damages provision is a penalty is a question of law for the court. [The Fifth Circuit] applies the two-part test set forth in the Restatement (Second) of Contracts § 356, comment b, to determine whether a liquidated damage clause constitutes a penalty": (1) whether the charge "approximates the actual loss that has resulted from a particular breach" or "approximates the loss anticipated at the time of the making of the contract;" and, (2) "the difficulty of proof of loss," which is considered on the principle that "[t]he greater the difficulty of proof of loss [under factor 2], the more flexibility is allowed in approximating the anticipated or actual harm [under factor 1]." *Louis Dreyfus Corp.*, 830 F.2d at 1331.

Comar contends that *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 2011 WL 890680 (E.D. La., 2011), *aff'd* 2013 WL 85915 (5th Cir. 2013), "is directly on point and fully dispositive of the issue of the enforceability of the liquidated damages provision." R. 205. Comar maintains that, just as in *Delta Towing*, determining actual damages in this case would involve speculative efforts to measure the financial loss to Comar. In particular, Comar states that the "highly variable nature of the day rates" for the vessels establish the extreme difficulty of proving Comar's losses related to defendants' termination. *R. 236; R. 221-3, CMC 016173-4; CMC 016177-78; CMC 0161184-85.*

Comar further argues that Defendants' consent to extend the terms of the Agreements when they acquired the MARAUDER evinces Defendants' belief that the liquidated damages provisions reasonably approximated the loss Comar would sustain in the event of a breach. Comar contends that because the liquidated damages provision here is directly linked to the obligation bargained-for under the Agreements, just as in *Delta Towing*, the

Court should find that the liquidated damages provision in this case is "a reasonable forecast of just compensation for the harm caused." *R. 236*. Comar cites the Unsworn Declaration of Glynn A. Haines, Manager of Nautical Investment and Comar, which states that Comar's agreement to sell the MARAUDER to Defendants for a below market price, on terms that were very favorable to defendants, was expressly made contingent on extensions of the existing Agreements for the ENFORCER, CONQUEROR and the RAIDER. *R. 205-8, Exh. B. ¶ 11*. Moreover, Comar argues that the liquidated damages provisions in the Agreements are not penalties because they include a 50% discount factor which is more favorable to the Defendants than the utilization rates actually experienced by the vessels - the days worked - which averaged 74%.

In opposition to Comar's motion, Defendants assert that when the Fifth Circuit factors are applied to the Termination provision in each of the Agreements in this case, the "termination fee" claimed by Comar actually constitutes an unenforceable penalty. In particular, Defendants contend that: (1) the termination fee provision does not count non-working days in the calculation of the "average gross daily charter hire" baseline and then does count prospective non-working days in order to maximize prospective alleged post-termination losses, thereby unrealistically inflating the termination fees; (2) in addition to the termination fees, Comar has the right to collect a 5% commission charge on certain post-termination charters, which results in "double-dipping" or charging "twice in two different ways for the same prospective loss;" (3) all four Agreements contain identical, "boiler-plate" termination provisions and were therefore not tied to the factual realities of the individual Agreements; (4) all of the Agreements are "cross-defaulted" under a provision in each Agreement that makes a default under the Agreement a default under all four Agreements; and, (4) Comar could have been placed in the same position by estimating any prospective liquidated damages on the monthly default management fee of $3,000 which provides for

profits and coverage of expenses even in months when the vessels were not working.[3] Defendants further contend, as an alternative basis for denying Comar's motion, that Comar's own prior material breach of the Agreements precludes any purported liquidated damage claims.

In *Delta Towing*, the court recognized that the non-complete/non-charter restrictions on plaintiff, International Marine, L.L.C. ("IM"), as provided in the agreement, were "fundamental and integral to [Delta's] willingness to sell the vessels to IM and that Delta would not have sold the boats for two million each, 'if we would have known they was [*sic*] competing against us.'" *Id.* at *9. The court noted that the liquidated damages provision "is crystal clear regarding the result of breach of [the agreement's] restrictions on the use. [Providing] that, in the case of violation of the restrictive covenants, [IM] was obligated to pay [Delta] the greater of $250,000 or the gross amount of revenue from the charter that was in violation within 30 days." *Id.* The Termination provisions in this case provide no such intent. After consideration of the exhaustive briefings filed by the parties, the Court finds there exist genuine issues of material fact and the factual record in inadequate to decide whether or not the Termination provision for liquidated damages constitutes a penalty. Accordingly, the Plaintiff's and the Defendants' cross-motions for partial summary judgment must be denied.

## VI. Conclusion

Based on the foregoing, the Motion For Partial Summary Judgment As To Liquidated Damages, Interest And Attorneys' Fees, filed by Plaintiff, Comar Marine Corporation, [Rec. Doc. 205] and the Motion For Partial Summary Judgment filed by Defendants, Marauder

---

[3] Defendants contend specifically that "in non-working months *after* termination, the default monthly fee of $3,000 to cover profit and general and administrative expenses would merely need to be reduced by [those expenses which were un-incurred] to arrive at the value of Comar's alleged prospective lost profits should Comar prevail at trial." *R. 243*.

8

Marine Logistics, LLC, Tracey P. Lirette, Chris St. Amand, Conqueror Marine Logistics, LLC, Raider Marine Logistics, LLC and Enforcer Mariner Logistics, LLC, [Rec. Doc. 221] will be denied.

_____
Richard T. Haik, Sr.
United States District Judge