UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Comar Marine Corp. | Civil Action No. 6:09-cv-1438 (Lead) |
| | 6:12-cv-1533 (Member) |
| versus | Judge Richard T. Haik, Sr. |
| Raider Marine Logistics, LLC, et al | Magistrate Judge Carol B. Whitehurst |

**MEMORANDUM RULING**

Currently pending before this Court is the district court's referral of the determination of attorney's fees as provided in the Judgment following the trial of this matter. [Rec. Doc. 290]  By Judgment dated May 21, 2013, the district judge assigned to this case awarded Plaintiff, Comar Marine Corporation ("Comar") reasonable attorneys' fees associated with the breach of contract claim and awarded Defendants, four vessel-owning LLCs—Marauder Marine Logistics, LLC, Conqueror Marine Logistics, LLC, Raider Marine Logistics, LLC and Enforcer Mariner Logistics, LLC (collectively referred to as "Defendants"), reasonable attorneys' fees associated with their claims for the wrongful arrest of the vessels.

*I. Background*

This matter arises from a contract dispute between Comar and Defendants. Comar managed the four vessels on behalf of Defendants under four contracts.  Defendants terminated the contracts prematurely in August 2009, and Comar filed this lawsuit for breach of contract alleging Defendants owed it monies caused by the contract breach. Thereafter, Comar claimed it had valid maritime liens over the vessels for the monies allegedly owed by Defendants and issued a warrant of arrest against the vessels to enforce its alleged liens.

Following arrest and seizure of the vessels, Defendants secured financing to bond out one of the vessels but failed to secure financing for the other three vessels and in September

2009, had to place them into bankruptcy. Comar filed its claims as a creditor in the bankruptcy proceedings asserting maritime liens over the vessels.

Also in September 2009, the mortgage holders on the vessels, J.P. Morgan Chase Bank ("Chase') and Allegiance Bank Texas ("Allegiance"), intervened in the lawsuit and filed motions for summary judgment to dismiss Comar's *in rem* claims against the vessels. The district court granted the banks' motions holding that Comar had no maritime liens against the vessels. Thereafter, Defendants filed counterclaims against Comar including, *inter alia*, wrongful arrest of the vessels.

After three and a half years, and extensive discovery and motion practice, the district court conducted a bench trial on February 26, 27 and 28, 2013 at which the participating parties were Comar and Defendants. As set out in the Judgment, the district court held that (1) the Defendants materially breached the contracts by terminating without cause, (2) the termination fee/liquidated damages clause in the contracts was penal and thus unenforceable, (3) Comar did not have valid maritime liens on the vessels, and (4) Comar wrongfully arrested the vessels. The Court awarded Comar $264,000.00 in liquidated damages based on the breach of contract. *R. 288, ¶ 201.* The Court held that Defendants failed to establish any actual damages from the wrongful arrest of the vessels. *Id. at ¶ 167.*

Because each contract required "the losing Party (as determined by the court)" to pay all attorneys' fees and expenses, the district court ordered that Comar was entitled to attorneys' fees with regard to the breach of contract claims and the Defendants were entitled to attorneys' fees with regard to the wrongful arrest of the vessels. The district court ordered the parties to submit their records and affidavits of reasonable attorneys' fees to Magistrate Judge Hill, the magistrate judge who preceded the undersigned, for determination.

On April 1, 2014, following the parties submissions related to their attorneys' fees claims, Magistrate Judge Hill conducted a settlement conference wherein the parties were

unable to reach a settlement. On August 13, 2015, the Court of Appeals for the Fifth Circuit issued its judgment affirming the district court's ruling and judgment. Hence, the attorneys' fees issue is now before the undersigned for determination.

## II. Guidelines For Attorneys' Fees Calculation

In the Fifth Circuit, the "lodestar" method is used to calculate reasonable attorneys' fees. *In re Fender*, 12 F.3d 480, 487(5th Cir.1994). In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), the Fifth Circuit identified twelve factors to be considered in determining an award of reasonable fees. Although *Johnson* was a civil rights case, the *Johnson* factors have been employed "whenever the award of reasonable attorneys' fees is authorized by statute." *Lawrence v. Morris*, 2011 WL 1304477, *1 (W.D.La.2011).

Under the "lodestar" analysis, the determination of reasonable attorneys' fees involves a two-step procedure. *Louisiana Power & Light Company v. Kelistrom*, 50 F.3d 319, 324 (5th Cir.1995) *citing Hensley*, 461 U.S. at 433. Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the court must multiply the reasonable hours by the reasonable hourly rates. Id. The product is the "lodestar," which the court either accepts or adjusts upward or downward, depending on the circumstances of the case, assessing the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional

relationship with the client; and (12) the awards in similar cases. *Id*. Many of the *Johnson* factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, and should not be double counted. *Jason D.W. by Douglas W. v. Houston Independent*, 158 F.3d 205, 209 (5th Cir.1998). Additionally, the Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors for enhancement purposes, and accordingly, the Fifth Circuit has held that "[e]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts." *Walker v. U.S. Department of Housing and Urban Development*, 99 F.3d 761, 771–72 (5th Cir.1996).

The fee applicant bears the burden of proving the reasonableness of the number of hours expended on their prevailing claim. *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir.1990). Applicants do not have the right to bill for time on issues on which they do not prevail. *Walker*, 99 F.3d at 769. The party seeking attorney's fees must present adequately documented time records to the court. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented. *Id*. *citing Hensley*, 461 U.S. at 432–34. Moreover, hours which result from the case being "overstaffed" or are "excessive, redundant or otherwise unnecessary," even though actually expended, are not hours reasonably expended and are to be excluded from the calculation. *Leroy*, 906 F.2d at 1079; *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir.1982) ("there should have been no compensation for hours spent in duplicative activity...."). The time of two or three attorneys in a courtroom or conference when one would do may be discounted. *Johnson*, 488 F.2d at 717. Finally, the court may reduce the fee award where a party fails to meet his evidentiary burden. *Hensley*, 461 U.S. at 433; *Leroy*, 831 F.2d at 585–86 (reducing the lodestar for inadequate documentation).

Ultimately, the court has discretion to fashion a reasonable attorneys' fee. *Hensley*

4

at 436–37. When making its determination, the court must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the requested hourly rate is reasonable, and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit. *Id*. at 437–39. The Fifth Circuit has noted that its "concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." *Brantley v. Surles*, 804 F.2d 321, 325–26 (5th Cir.1986).

### III. Attorneys' Fees Submissions and Objections Thereto

*1. Comar's Submissions*

The affidavit of Comar's lead counsel, Robert Stefani, of King, Krebs & Jurgens, PLLC ("King Krebs"), states that the total amount of attorneys' fees sought by Comar is $501,134.95 for legal services from 2009 through May 31, 2013, performed by ten (10) attorneys, five (5) paralegals and two (2) lawclerks. *R. 296-1, Aff. Of Stefani*. Comar contends, to the extent the time and labor required for litigating this "multi-party maritime case in this court and the bankruptcy court" are not fully considered in the lodestar, they should be considered as a basis for an upward departure under the first *Johnson* factor.

Defendants object to Comar's counsel's billing invoices asserting that the entries include tasks that are non-recoverable. *R. 310.* They submit opposition spreadsheets listing their objections to specific entries made by Comar including those related to: (1) wrongful arrest and/or the maritime lien litigation; (2) Defendants' bankruptcy proceedings; (3) termination fees/liquidated damages; (4) claims on which Comar partially prevailed; (5) Comar's abandoned claims; (6) claims incorrectly or excessively billed; and (7) clerical tasks. *R. 309*. Defendants submit that Comar's total fee request should be reduced by more than 50%.

*2. Defendants' Submissions*

Defendants submit that during the litigation, counsel in five law firms provided legal services related to the wrongful arrest on their behalf: (1) Baker Donelson Law Firm ("Baker Donelson")– $279,192.40; (2) Gordon Arata Law Firm–$222,333.86; (3) Wayne A. Shullaw–$27,388.00; (4) Vidrine & Vidrine Law Firm ("Vidrine & Vidrine")–$31,910.84; and, (5) Elmore & McConnell Law Firm ("Elmore & McConnell")– $124,644.48 for a total of $685,465.58.  *R. 297*.

The billing invoices for Elmore & McConnell provide that the firm represented Defendants in the lead case from August 20, 2009 through January 31, 2012, while those of Baker Donelson pertain to that firm's representation of Defendants in the lead case from January of 2012 through the February 2013 trial and the motion practice which followed. The billing invoices for Vidrine & Vidrine relate to Defendants' 2009 bankruptcy proceedings filed after the arrest of the vessels.

Defendants submit that the billing invoices of Gordon Arata and Wayne A. Shullaw represent attorney's fees "incurred by Allegiance's and Chase's counsel," respectively, for those banks' defense of Comar's assertion of maritime lien rights against them. Defendants cite the loan agreements between Defendants and Allegiance and Defendants and Chase as requiring that Defendants pay the reasonable attorney's fees incurred by the banks in defending their mortgage liens over the vessels.[1]

Defendants contend that in order to offset any reductions the Court may make, the Court should consider the following *Johnson* factors in light of the length and complexity of this litigation: Number 1, Time & Labor Involved; Number 2, Novelty & Difficulty of the

---

[1] Trial exhibits 315 and 316 provide that any proceeds from the sale of the vessels shall be applied first to the payment of all attorney's fees, costs and expenses made by [the Bank] in the protection of its rights. *R. 297, FN 3; 4*. Further, the Chase Bank agreement specifically provides that "if [the Vessel Parties] [file] for bankruptcy or other relief from creditors, [the Vessel Parties] agrees to pay [Chase's] reasonable attorneys fees." *Id. at FN 5*.

6

Questions; Number 3, Skill Requisite to Perform the Legal Services Properly; Number 7, Time Limitations; and, Number 8, The Amount Involved & the Results Obtained.

Comar objects to Defendants inclusion of the billing invoices of their bankruptcy attorneys, Vidrine & Vidrine Law Firm, as well as those of Gordon Arata Law Firm and Wayne A. Shullaw, for the attorney's fees incurred by the intervenors, Allegiance Bank and Chase Bank. Comar further objects to Defendants' request for compensation related to the personal guarantors and liquidated damages issues as well as for work relating to unsuccessful claims and contentions, including under LUTPA and breach of its good faith duty.

Comar filed a general objection to Defendants' original exhibit of the attorneys' fees paid to their initial counsel from August, 2009 to November, 2011, Elmore & McConnell, because it listed only the date and amount of the invoices submitted to Defendants. *R. 297-8*. After Defendants supplemented the exhibit with detailed entries, Comar filed spreadsheets with specific objections to many of the entries. In light of Defendants' ultimate filing of the billing entries of Elmore & McConnell, the Court will consider the hourly rates and hours expended by that firm in determining reasonableness of the attorneys' fees paid by Defendants.

*IV. Analysis*

*A. Hourly Rates Claimed*

In order to determine reasonable hourly rates, attorneys' fees are to be calculated at the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant community" for the purpose of awarding attorney fees is the judicial district in which the litigation occurred, in this case the Western District of Louisiana. *Jordan v. Allain*, 619 F.Supp. 98, 113 (N.D.Miss.1985).

In his affidavit, King Krebs' attorney Robert Stefani submits the hourly billing rates

of the attorneys and paralegals performing work for Comar. *R. 296-1, Exh. A-2*. He further represents that the rates reflect those requested by Comar: (1) Associates with 1–5 years experience—$130–$160/hour; (2) Partners with over 8 years experience—$175 & $185/hour; (3) Partners with over 20 years of experience—$235 & $290/hour; and, (4) Partners with over 35 years of experience—$300 & $340/hour.

Defendants submit the hourly rates for (1) Baker Donelson: attorney with 1 to 5 years experience—$175/hour; attorney over 5 years experience—$155–$230/hour; attorney over 20 years experience—$206.50–$260/hour; attorney over 25 years experience—$286–$365/hour; paralegals—$99.35–$125/hour; (2) Elmore & McConnell: attorneys with 15 years experience—$225/hour; paralegals—$85–$95/hour; (3) Vidrine & Vidrine, attorney over 20 years experience—$250/hour.

The records indicate that Stefani, Comar's lead trial attorney and a partner at King Krebs with over 25 years of experience, charged a rate of $290/hour. Hank Arnold, the lead trial attorney for Defendants, a partner at Baker Donelson, also with over 25 years experience, charged an hourly rate of $365.00. Chris Hannan, a Baker Donelson associate with over five years experience, charged a rate of $230/hour while the King Kreb's associates with similar experience charged $175.00 per hour. The affidavits of Arnold and Hannan represent that their associate attorneys with 1 - 5 years experience were charged at a rate of $175.00/ hour, the senior partner with over 30 years of experience at a rate of $300/hour and the paralegal at the rate of $110/hour. Defendants state that the hourly rates for the Baker Donelson counsel, as provided above, are rates reasonable "in the New Orleans community." The reasonable rates, however, must be "the prevailing market rates in the relevant community"— the Western District of Louisiana in this case. The Court must therefore determine the reasonable hourly rate for Comar and Defendants' counsel given their similar ability and experience.

Defendants have failed to submit any evidence of the rates charged by commercial litigation attorneys in this judicial district or the Lafayette legal community. Comar submits cases in this judicial district of awards ranging from $250 to $262 per hour. Comar also cites *Wells Fargo Equipment Finance, Inc. v. Beaver Const., LLC*, 2011 WL 5525999, at *4 (W.D.La.,2011), a declaratory judgment action, in which the court found that $340.00 per hour for 38 hours of legal work was a reasonable rate for a New Orleans partner of over 20 years. *Wells Fargo*, however, is an anomaly. In that case the court did not address the prevailing market rates in the relevant community. Instead it found there was no objection to the rates sought and held the amount was "*prima facie* reasonable." Most recently, in *SBA Towers II, LLC v. Innovative Anchoring Systems, LLC*, 2015 WL 5944300, at *4 (W.D.La.,2015), the court awarded $250.00 per hour to a partner in the New Orleans community with 21 years of commercial litigation experience and $175.00 per hour for an associate with 7 years of litigation experience.

Here, based on the qualifications and experience of Stefani and Arnold, the undersigned's general knowledge of the hourly rates of partners and associates in this legal community, because commercial litigation commands a higher rate, and because Comar's requested rate was not challenged by Defendants, the undersigned finds $290.00 per hour for Stefani and Arnold to be a reasonable hourly rate for attorneys with over 25 years of experience, $175.00 per hour for Hannan and similarly experienced associates and $150 per hour for associate attorneys with five or less years of experience.

*B. Reasonable Hours Expended*

In addition to both parties' voluminous exhibits which summarize the hours expended by each lawyer which represented them in this lawsuit, the parties submit spreadsheets with reasons set out for each entry they believe is objectionable. Comar submitted spreadsheets of objections to billing entries of Elmore & McConnell and Baker Donelson, Defendants'

counsel in the lead case. Defendants submitted a spreadsheet of objections related to King Krebs' billing entries. Comar's objections consist of over 1000 entries and are mainly that Defendants' counsel include attorneys' fees for representation outside of the wrongful arrest. Defendants' objections consist of over 800 entries and are primarily that King Krebs' invoices include attorneys' fees for the wrongful arrest as well as representation in the bankruptcy.

While rulings on fee awards should not "consume more paper than did the cases from which they arose[,] ... the district court's findings and reasons must be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228–29 (5th Cir.2008). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection," and therefore "substantial deference" is owed the district court's "overall sense of a suit." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011). With this guidance, the Court will consider the submissions in the billing invoices and the objections thereto.

*1. Reduction of Billing Invoices*

Comar submits billing statements which total $581,761.00 with $85,121.05 in reductions, for a total recovery of attorneys' fees in the amount of $501,134.95.[2] In his affidavit, Stefani specifically lists the amounts and reasons for the reductions: (1) $6,095.00 deemed "unproductive, excessive, or redundant"; (2) $1,424.00 deemed "unrelated" to Comar's claims; (3) $25,838.00 as related to the arrests of the vessels; and (4) $47,269.05 as related to Comar's entitlement to maritime liens. *Id., Exhs. A-3 & A-4.*

Defendants' billing invoices reflect submissions from five law firms. The majority of

---

[2] Stephani represents that the amount of $581,761.00 reflects a "write-off" of $79,026.00, removed from the billing statements before the bill was sent to Comar. *R. 296*.

Defendants' defense in the lead case was provided by the Baker Donelson Law Firm, and in particular, trial attorney, Hank Arnold, and associate attorney, Christopher M. Hannan. Their affidavits represent that the 1–5 year associate attorneys' hours have been reduced by 5%, the senior partner, Mr. Roussel's, hours have been reduced by 50% and the paralegal, Lori Hunter's, hours have been reduced by 30%. They further represent that the reduction of 11% adequately reflects time spent on unsuccessful claims, and that they have omitted the time entries of three associate attorneys as duplicative and/or ultimately unproductive.

The Court finds that the foregoing reductions by both parties are adequate to reflect any unsuccessful, unproductive, excessive, redundant or unrelated charges that exist in the billing statements.

*2. Defendants Recovery of the Banks' Attorneys' Fees*

The parties submit claims for attorneys' fees based on the vessel contracts between Comar and Defendants. Article 17 of the contracts provides:

> ARTICLE 17. ATTORNEYS' FEES AND EXPENSES. If either party engages an attorney to enforce its rights under this Agreement and/or institutes litigation to enforce such rights, the losing Party (as determined by the court) shall pay all attorneys' fees and expenses, court costs, costs of vessel arrest and seizure incurred by the other Party.

Comar objects to Defendants inclusion of the attorneys' fees incurred by Allegiance and Chase for their defense of Comar's maritime lien claims in this Court as well as in the bankruptcy court. The mortgage agreements between Defendants and Allegiance and Chase each required Defendants to reimburse the banks for the reasonable attorneys' fees they incurred in protecting their mortgage lien rights. Defendants contend these attorneys' fees are recoverable either as damages caused by Comar's bad faith wrongful arrest or as fees recoverable under the plain language of Article 17.

Defendants have provided no authority, and this Court has located no

11

jurisprudence on point, for the assertion that Comar should pay the attorneys' fees incurred by a non-party to the contract under which the attorneys' fee provision is contained. While such fees and expenses may be akin to damages, that argument comes too late. Rather, it is axiomatic that an attorney fee award based on a contract fee provision (which is the issue before the Court) is limited to the fees incurred by the party to the contract who successfully proves or defends against claims that are specifically provided for by the attorney fee clause, as opposed to fees incurred by other parties who were not parties to the contract. *See Wal-Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 244–46 (5th Cir. 2011). Defendants' reimbursement of attorneys' fees based on their mortgage agreements with Allegiance and Chase may not be considered as part of Defendants' claim. The Court will deduct the attorneys' fees of Gordon Arata and Wayne A. Shullaw from the charges submitted by Defendants.

*3. Defendants Recovery of the Bankruptcy Attorney's Fees*

Comar also opposes Defendants claim that the Court should award the fees and costs of Vidrine & Vidrine, bankruptcy counsel who represented Defendants' three vessels placed into bankruptcy after the wrongful arrest. Defendants assert that the wrongful arrest of the vessels by Comar caused them to be placed into bankruptcy. Comar argues that the vessel owners made the decision to put the vessels into bankruptcy because they didn't want to post the bond amount and Chase was unwilling to loan them the bond money.

The record indicates that following Defendants' filing for bankruptcy of the vessels, Comar filed a proof of claim in the proceedings in order to protect its claims caused by the breach of contract. Both Comar and Defendants were represented throughout the entire bankruptcy proceedings—Comar by King Krebs and Defendants by Vidrine & Vidrine. Because Comar's wrongful arrest of the vessels is inextricably tied to

Defendants' breach of contract for management of the vessels, the Court finds that both parties claim for attorneys' fees related to the bankruptcy proceedings may be asserted.

*C. Costs and Expenses*

Comar seeks reimbursement of costs and expenses incurred by counsel. Stefani states in his affidavit that its "Total Costs Billed" are $20,225.07. After deducting $4,935.61 in costs related to the arrest of the vessels, Comar's total cost request is $15,289.46.[3] Defendants submit they are entitled to reimbursement of $10,882.79, which reflects $11,882.79 they actually billed, reduced by $1000 to account for legal research. They also submit that Allegiance, represented by Gordon Arata, incurred a total of $1,969.11 in costs. Because the Court has disallowed the inclusion of Allegiance's attorneys' fees, it will exclude the costs incurred as well. Defendants provide in their memorandum that the fees of Elmore & McConnell and Vidrine & Vidrine were included in their submissions for attorneys' fees.[4]

Reasonable out-of pocket expenses may be awarded to a prevailing party "because they are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors v. Orleans Parish School Board*, 919 F.2d 374, 380 (5th Cir.1990). Whether these expenses are reasonable is committed to the sound discretion of the trial judge. *Id*. After considering the billing statements of the law firms and the deductions made by the parties, the Court will award the parties costs and expenses as requested.

## V. Conclusion

Based on the foregoing, the undersigned recommends that attorneys' fees in the

---

[3] While Comar submits that the amount is "$15,319.46", this is apparently a mathematical error.

[4] Defendants also submit that the costs and expenses of Wayne Shullaw, bankruptcy counsel for Chase Bank were included in their fee request. Just as the Court will not consider the costs of Gordon Arata on behalf of Allegiance Bank, it will not consider those of Chase Bank.

amount of $501,134.95 be awarded to Comar.

As to Defendants' hourly rates, the undersigned further recommends the following:

(1) that the hourly rates of Baker Donelson's attorneys and staff be reduced as follows:

Hank Arnold from $360.00 to $290.00—reduced from $123,120 to $99,180 (-$23,940.00);

Christopher Hannan from $230.00 to $175.00—reduced from $97,566 to $74,235 (-$23,331.00); and,

Associate attorneys from $175.00 to $150.00—reduced from $15,400 to $13,200 (-$2,200), totaling $49,471.00

(2) that the attorneys' fees of the Gordon Arata Law Firm and Wayne A. Shullaw, totaling $249,721.86, be deducted from the total attorneys' fees; and,

(3) that the total amount of $386,272.72 ($685,465.58 - 23,940.00 - 23,331.00 - 2,200 - 249,721.86) in attorneys' fees be awarded to Defendants.

The undersigned further recommends that Comar be awarded $15,289.46 in costs and expenses and Defendants awarded $10,882.79 in costs and expenses.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted

by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Signed January 7, 2016, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE